IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GLORIA WAKEFIELD,           )
                            )
        Plaintiff,          )
                            )
v.                          )           Case No. 2:20-cv-184-SMD
                            )
KILOLO KIJAKAZI,            )
*Acting Commissioner of Social Security*,[1]   )
                            )
        Defendant.          )

## OPINION & ORDER

In January 2017, Plaintiff Gloria Wakefield ("Wakefield") filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Tr. 33. She alleged disability beginning June 13, 2016. Tr. 33. Wakefield's application was denied at the initial administrative level, and she received an unfavorable decision after a hearing before an Administrative Law Judge ("ALJ"). Tr. 117, 42. Wakefield appealed the ALJ's decision to the Social Security Appeals Council, which denied review. Tr. 1-7. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Wakefield now appeals that decision under 42 U.S.C. § 405(g). *Wakefield's Brief* (Doc. 19) p. 2.[2] For the reasons that follow, the undersigned affirms the

---

[1] Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant in his official capacity in this action under Federal Rule of Civil Procedure 25(d)(1).

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. *Pl.'s Consent* (Doc. 16); *Def.'s Consent* (Doc. 19).

Commissioner's decision.

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional

---

[3] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.    STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991).[6]

---

[4] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

[6] A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Wakefield, who was 55 years old at the time of the alleged onset date, has a high school education and past work experience as a tire sorter, forklift driver, and an ingredient mixer. Tr. 59. She alleged disability due to back pain, right leg pain, and carpal tunnel syndrome in both hands. Tr. 60-69.

The ALJ made the following findings with respect to the five-step evaluation process for her disability determination. At step one, the ALJ found that Wakefield has not engaged in substantial gainful activity since her alleged onset date. Tr. 35. At step two, the ALJ found that Wakefield suffers from the following severe impairments: "degenerative disc disease; carpal tunnel syndrome, status post release with trigger finger, status post release and cubital tunnel syndrome; osteoarthritis (including hands); hypertension; and obesity[.]" Tr. 35. At step three, the ALJ found that Wakefield "does not have an

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 36.

The ALJ proceeded to determine Wakefield's RFC, finding that "the claimant has the residual functional capacity to perform medium work as defined in 20 CRF 404.1567(c) except: she can frequently climb ramps, stairs, ropes, ladders, and scaffolds. She can frequently stoop, kneel, crouch, crawl, handle, and finger." Tr. 37. Finally, the ALJ utilized the testimony of a VE and determined that Wakefield is "capable of performing past relevant work as a cheese making laborer[,]" and that "this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." Tr. 41. Accordingly, the ALJ determined that Wakefield had not been under a disability from June 13, 2016, through the date of her decision. Tr. 42.

## IV.   DISCUSSION

The following issues are before the Court: (1) whether the ALJ's RFC finding was rooted in the Medical Record; (2) whether the ALJ erred in her evaluation of Dr. Marshall's opinions; (3) whether the ALJ erred in her evaluation of record-reviewing medical source opinions; (4) whether the ALJ erred in her evaluation of Wakefield's statements regarding the nature and limiting effects of her symptoms; and (5) whether substantial evidence supports the ALJ's finding that Wakefield could perform a range of medium work. Wakefield's Brief (Doc. 19) p. 1.

**A.  The ALJ's RFC determination is supported by substantial evidence.**

Wakefield argues that the ALJ failed to address relevant medical evidence that undermined the ALJ's RFC determination.[7] *Id.* at 8. Wakefield specifically asserts that, in formulating her RFC determination, the ALJ erroneously "rejected the opinions of . . . Dr. Marshall and adopted the opinions of State Agency Record-Reviewing Sources." *Id.* at 9. Wakefield also argues that the ALJ erred in evaluating her own statements about the limiting effects of her symptoms. *Id.*

An RFC determination is within the authority of the ALJ and the assessment should be based on all relevant evidence of a claimant's ability to work despite her impairments. *Beech v. Apfel*, 100 F. Supp. 1323, 1330 (S.D. Ala. 2000) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). The ALJ need not discuss every piece of evidence so long as the ALJ considers the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ must, however, provide a sufficient rationale to link the evidence to the RFC determination. *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

The undersigned finds that the ALJ's RFC determination, which is sufficiently detailed and based on an adequate summary of the evidence, is supported by substantial evidence. In making her determination, the ALJ found that "[t]hough [] [Wakefield] alleges

---

[7] Wakefield also asserts that the ALJ erroneously ignored notes and evidence from other various healthcare providers. *See Wakefield's Brief* (Doc. 19) p. 8.

that she continues to experience significant pain in her hands and fingers, thus restrict[ing] her hands and limit[ing] her ability to perform significant manipulative activities, medical reports do not fully corroborate her allegations." Tr. 38. The ALJ supports this finding with medical reports, a nerve study, and physical examinations spanning from 2016 through 2018 that indicate significant improvement in Wakefield's condition, an ability to return to work with no restriction, a well healed carpal tunnel scar, no significant pain, maximum range of motion, 5/5 strength in fingers and thumbs, and active range of motion with no tenderness. Tr. 38. Similarly, the ALJ found that the alleged severity of Wakefield's chronic back pain and associated limitations are not supported by the medical evidence. Tr. 38. In support, she points to medical reports, physical therapy reports, and an imaging report spanning from 2016 through 2018 that showed no more than mild weakness in Wakefield's legs, normal weakness and tone in all extremities, pain that Wakefield described as mild, decreased pain with improved functioning, that she maintains active range of motion, no significant abnormalities, and no more than mild to moderate spinal impairment. Tr. 38. Finally, the ALJ addressed Wakefield's obesity and found that it could interfere with walking, sitting, and standing for extended periods of time, along with exacerbating her pain symptoms. Tr. 38. She therefore restricted Wakefield "in her ability to climb or perform continual postural actions." Tr. 38.

Additionally, Wakefield asserts that the ALJ failed to address much of the medical evidence, which precluded a "sufficient summary of the medical evidence." Wakefield's Brief (Doc. 19) p. 8. Wakefield points to: (1) Dr. Marshall's treatment notes dated 12/12/16

through 10/25/18; (2) Dr. James McGrory's/Hughston Clinic records dated 8/21/17; (3) Dr. Garland Gudger/Hughston Clinic treatment notes date 8/21/17 through 10/15/18; (4) physical therapy records dated 10/1/18 through 10/31/18; and (5) Dr. Garland Gudger/Hughston Clinic treatment notes dated 10/9/18 though 11/15/18. *Id.* Moreover, Wakefield asserts that there is not a sufficient rationale linking the evidence to the ALJ's conclusion, specifically as to evidence stating that she continued to suffer from upper extremity and low back symptoms which she contends leads to difficulty walking, sitting, and standing for prolonged periods. *Id.* But, the ALJ accounted for these symptoms in her analysis regarding Wakefield's obesity. *See* Tr. 38.

Wakefield has not shown that the ALJ ignored relevant evidence that would contradict her RFC determination. As such, substantial evidence supports the ALJ's RFC determination. Thus, any failure to discuss any particular piece of evidence is harmless error. *See* Comm.'s Brief (Doc. 20) p. 6.

**B. The ALJ did not err in choosing not to give Dr. Marshall's opinions controlling weight.**

Wakefield argues that the ALJ did not properly evaluate the opinions of her primary care physician, Dr. Marshall. Wakefield's Brief (Doc. 19) p. 10. Specifically, she contends that Dr. Marshall's opinions should be afforded controlling weight because they were consistent with the record and supported by objective medical evidence. *Id.* at 11. Further, she argues that, even if Dr. Marshall's opinions were not deserving of controlling weight, the ALJ failed to provide good cause to assign the opinions little weight. *Id.* at 13.

An ALJ is required to state with particularity the weight given to particular medical opinions and the reasons therefore. *Sharfaz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The Social Security Regulations define a "treating source" as a medical source, including a physician, who has provided the claimant with medical treatment and has, or previously had, an ongoing treatment relationship with the claimant. *Mills v. Berryhill*, 824 F. App'x 894, 897 (11th Cir. 2020) (citing 20 C.F.R. §§ 404.1527, 416.927). The opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Id.* at 897-98 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). "Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records." *Id.* at 898 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). When good cause exists, the ALJ may disregard a treating physician's opinion, but must clearly articulate the reasons for doing so. *Id.* Failure to do so is reversible error. *See Lewis*, 125 F.3d at 1440. There is no reversible error if the ALJ articulates specific reasons, supported by substantial evidence, for not giving the opinion of a treating physician controlling weight. *Mills*, 824 F. App'x at 898 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

The ALJ's decision to not give controlling weight to Dr. Marshall's opinions is supported by substantial evidence. Neither of the parties dispute that Dr. Marshall is considered a treating physician under the Social Security regulations. Because he is

9

considered a treating physician, the ALJ must clearly articulate the weight she is giving his opinions and, if she gives the opinions less than controlling weight, she must show good cause for doing so.

In her opinion, the ALJ afforded Dr. Marshall's opinions little weight. Tr. 39. She reasoned that "[Dr. Marshall] has not supported his opinions with an analysis describing how he found this degree of limitation or the inconsistency of these findings with the objective evidence from her MRI . . . or the mild findings in nerve studies[.]" Tr. 39. She then noted Dr. Marshall's opinion is inconsistent with the treating specialist that suggested Wakefield return to work duties without restriction, and Wakefield's reports of her activities. Tr. 39. The ALJ also provided examples of inconsistencies between Dr. Marshall's opinions and other sources as well as inconsistencies within his own records. Tr. 39-40. These inconsistencies provided the ALJ with good cause to discount Dr. Marshall's opinions. Therefore, she did not err in assigning the opinions little weight. Moreover, because good cause exists, the ALJ was not required to explicitly address all of the factors concerning what weight to give a medical opinion. *See Lawton*, 431 F. App'x at 833. As such, the undersigned concludes that the ALJ's decision to not afford Dr. Marshall's opinions controlling weight is supported by substantial evidence.

**C.  The ALJ did not err in giving the Medical Consultants' opinions significant weight.**

Wakefield argues that, because they are considered non-examining sources, and because they reviewed the record well before most of the medical evidence had been submitted, the ALJ erred by giving significant weight to the opinions of Dr. German and Dr. Walker. Wakefield's Brief (Doc. 19) pp. 14-16. She also asserts that the ALJ's reasoning that the March 2017 and May 2017 reports were consistent with the medical evidence was flawed. *Id.* at 15.

"The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarret v. Comm'r of Soc. Sec.*, 422 F.App'x 869, 873 (11th Cir. 2011). The opinion of a non-examining physician is entitled to little weight when it is contrary to the opinion of an examining physician and alone do not constitute substantial evidence. *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012) (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985)). But, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Id.* at 901-02 (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). If the ALJ clearly articulates her reasons for giving significant weight to non-examining physician's opinions, *e.g.*, stating that their opinions were more consistent with the medical evidence, then the decision is supported by substantial evidence. *Id.* at 902.

The ALJ's decision to afford Dr. German's and Dr. Walkers's opinions significant weight is supported by substantial evidence. Here, the ALJ articulated clear reasons for

giving significant weight to Dr. German's and Dr. Walkers's opinions. In her opinion, she stated that she

> [a]dopted these findings based upon consistency with the medical evidence of record, including nerve conduction study at Exhibit 17F which reveals a well healed carpal tunnel surgical scar and no significant pain in the right hand/fingers, along with an imaging report of the lumbar spine at Exhibit 2F, revealing active range of motion and no[sic] evidence of no more than a mild to moderate spinal impairment.

Tr. 40. Because the ALJ presented reasoning that the opinions of Drs. German and Walker were consistent with the medical evidence, she was justified in giving their opinions significant weight. Moreover, because the ALJ's decision to not give Dr. Marshall's opinions significant or controlling weight is supported by substantial evidence, the ALJ was justified in giving Dr. German's and Dr. Walker's opinions greater weight than Dr. Marshall's opinions. *See Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012). As such, the ALJ's decision to afford Dr. German's and Dr. Walker's opinions significant weight is supported by substantial evidence.

### D.  The ALJ did not err in her Subjective Symptoms Evaluation.

Wakefield asserts that the ALJ failed to adequately consider her subjective symptom testimony. Wakefield's Brief (Doc. 19) p. 17. Wakefield also argues that the ALJ was mistaken when she stated that there were inconsistencies in the various statements that Wakefield had given. *Id.*

Where a claimant attempts to establish a continuing disability through her own testimony of pain or other subjective symptoms, a three part pain standard applies. *Johnson v. Comm'r, Soc. Sec. Admin.*, 618 F. App'x 544, 549 (11th Cir. 2015) (per curiam) (citing

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The pain standard requires the following: (1) evidence of an underlying medical condition, and (2) either (a) objective medical evidence confirming the severity of the alleged pain or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)) (quotations omitted). The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Holt*, 921 F.2d at 1223 (quotations omitted). If the ALJ discredits subjective testimony, she must articulate explicit and adequate reasons for doing so. *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. 2021) (citing *Wilson*, 284 F.3d at 1225). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) dosage and effects of medications; and (5) treatment or measures received by the claimant for relief of symptoms." *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 752 (11th Cir. 2021) (citing 20 C.F.R. § 404.1529(c)(3)). If the ALJ does not explicitly refer to the language of the pain standard test, remand can be avoided if his findings and discussion indicate that the standard was applied. *Wilson*, 284 F.3d at 1225-26.

The ALJ's evaluation of Wakefield's subjective pain symptoms is supported by substantial evidence. First, the ALJ summarized Wakefield's alleged symptoms, specifically her chronic back and hand pain, pain down her back that radiates into her right

leg, swelling in her right leg, and carpal tunnel in both hands. Tr. 37. The ALJ also lists the other limitations Wakefield experiences, which are: (1) that she can only lift one pound and cannot lift a gallon of milk; (2) that she has difficulty walking due to pain in her low back; (3) that she can stand 45 minutes, but not more than an hour before needing a break of 15-20 minutes; (4) that she has trouble sleeping; (5) that she is constantly laying down during the day and must rely on her husband to assist her with daily activities; and (6) that she is barely able to cook and when she watches television she has difficulty focusing. Tr. 37.

Next, the ALJ found that Wakefield's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 37. Specifically, she found that "[t]hough [Wakefield] alleges that she continues to experience significant pain in her hands and fingers, thus restrict[ing] her range of motion in her hands and limit[ing] her ability to perform significant manipulative activities, medical reports do not fully corroborate her allegations." Tr. 38. The ALJ then provided examples from throughout Wakefield's medical records indicating that she had fully recovered from a successful carpal tunnel surgery and was able to return to work without restriction. Tr. 38.

As for her backpain, the ALJ noted that "[r]eports suggest that [Wakefield's] [back] pain radiates to her lower extremities, resulting in decreased range of motion and difficulty walking, sitting, or standing for prolonged periods." Tr. 38. However, the ALJ found that

"the alleged severity of her chronic back pain and associated limitations are not supported by the medical evidence." Tr. 38. She provided numerous examples showing that Wakefield had active range of motion, only mild weakness in her legs, and mild pain. Tr. 38.

Further, the ALJ addressed Wakefield's daily activities, stating that, while alleging that she has trouble performing certain daily activities, "reports show that she has engaged in a somewhat normal level of daily activity and interaction." Tr. 40. The ALJ then gave examples of Wakefield's daily activities and explained that "some of the physical and mental abilities and social interaction required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." Tr. 40.

The undersigned concludes that the ALJ gave explicit and adequate reasons for discrediting Wakefield's testimony regarding her subjective symptoms. The ALJ considered appropriate factors when making her determination and applied the appropriate three-part pain standard. As such, the undersigned finds that the ALJ's determination to discount Wakefield's subjective symptoms is supported by substantial evidence.

### E.  The ALJ's determination that Wakefield can perform her previous relevant work is supported by substantial evidence.

Finally, Wakefield argues that the ALJ's determination that she can perform a reduced range of medium work is erroneous. Wakefield's Brief (Doc. 19) p. 18 She further asserts that, under the Medical Vocational Guidelines, she is disabled even if she could perform light work. *Id.* at 19 (citing Grid Rule 202.04, App'x 2 to Subpart P, Part 4).

Wakefield's argument appears to be another attempt to challenge the ALJ's conclusion that she can perform medium work. As explained above, The ALJ's finding that Wakefield can perform a reduced range of medium work is supported by substantial evidence. Whether Wakefield would be considered disabled if she could perform light work is irrelevant. As such, the undersigned concludes that the ALJ's determination is supported by substantial evidence.

## VI.    CONCLUSION

Accordingly, it is

ORDERED that the Commissioner's decision is AFFIRMED.

DONE this 7th day of March, 2022.


_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE

16